Melvin R. and Evelyn Hansche, et al., [1] v. Commissioner. Hansche v. Commissioner
Docket Nos. 2475-69, 2516-69, 2561-69.
United States Tax Court
T.C. Memo 1970-342; 1970 Tax Ct. Memo LEXIS 20; 29 T.C.M. (CCH) 1655; T.C.M. (RIA) 70342; December 16, 1970, Filed William J. Willis, 1500 First Wisconsin National Bank Bldg; Milwaukee, Wis., for the petitioners. Lawrence G. Becker, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in the income tax of petitioners have been determined by the Commissioner for the following respective years and amounts: Petitioner
Docket No.
Year
Amount
Melvin R. and Evelyn Hansche
2475-69
1964
$2,224.85
1965
472.86
1966
726.15
Raymond V. Hansche and Estate of Margarethansche
2516-69
1964
3,815.27
1965
2,444.53
1966
1,412.71
Warren M. and Leona D. Hansche
2561-69
1964
1,623.30
1965
1,358.60
1966
1,195.07
The only issue presented is whether respondent has erred in disallowing capital gains treatment to petitioners' income from the *21 sale of subdivided lots during the years at issue. Findings of Fact All of the facts which have been stipulated are found as stipulated. 1656 Petitioners Melvin R. and Evelyn Hansche are husband and wife and were such during all of the years relevant to this proceeding. During the years 1964 to 1966, inclusive, and at all times material hereto, they were residents of Racine, Wisconsin. They filed Federal income tax returns for the taxable years 1964, 1965, and 1966 with the district director of internal revenue at Milwaukee, Wisconsin. Petitioners Raymond V. and Margaret Hansche were husband and wife during the years relevant to this proceeding until the death of Margaret on or about March 18, 1969. Raymond is executor of the estate of Margaret. During the years 1964 to 1966, inclusive, they were residents of Racine, Wisconsin. Raymond's address was the same at all subsequent times. Raymond and Margaret filed Federal income tax returns for the taxable years 1964, 1965, and 1966 with the district director of internal revenue at Milwaukee, Wisconsin. Petitioners Warren and Leona Hansche are husband and wife and were such during all of the years relevant to this proceeding. *22 During the years 1964 to 1966, inclusive, they were residents of Racine County, Wisconsin. They filed Federal income tax returns for the taxable years 1964, 1965, and 1966 with the district director of internal revenue at Milwaukee, Wisconsin. Raymond V. Hansche, Melvin R. Hansche, and Warren M. Hansche are brothers. On May 6, 1942, Melvin, Evelyn, Raymond, Margaret, Warren, and Leona Hansche (hereinafter sometimes referred to as the petitioners and the Hansches) purchased property in Mount Pleasant Township, County of Racine, Wisconsin, then known as the Mecham Farm and later designated by them as Pleasant Valley Estates Subdivision (sometimes hereinafter referred to as Pleasant Valley). The character of the area of the Mecham Farm at the time the Hansches purchased it was residential. Mount Pleasant Township is located immediately adjacent to the City of of Racine. The Mecham Farm as purchased by the Hansches consisted of 130 acres. The eastern portion of that farm, approximately 55 acres, was sandy and consequently usable farm land only for limited crops and only when irrigated. Fifteen acres of the farm, the southwest corner of the property, was heavily wooded and also untillable *23 and was sold by the Hansches shortly after purchase for residential use. The petitioners farmed Mecham Farm until 1951. The central 30 acres of the property were farmed by a lessee farmer until 1954. As a condition of their purchase of Mecham Farm, the Hansches conveyed to Howard Piper two lots from the farm property on Lathrop Road. One of these lots was later reconveyed to the Hansches. The Hansches were aware that Piper anticipated building a residence on this property. On August 27, 1943, the petitioners set out their intended future use of the property known as the Mecham Farm in a document entitled "Agreement and Declaration of Restrictions Upon Real Estate." On page 1 of that document, petitioners recited their intentions concerning that property to be: to sell the aforesaid premises in parcels and for their benefit and for the benefit of themselves, their heirs, personal representatives, grantees, mortgagees and assigns, and to restrict the use of said premises all as hereinafter set forth; The agreement provided, in part, as follows: 1. The property for the most part was limited to residential use and to single family dwellings with one building to a lot. 2. *24 Provided for minimum lot size and cost of residence and set-back requirements. 3. Prohibited the maintenance of animals (other than household pets), advertising signs, and the sale of intoxicating liquor, and the sale of the property to anyone who was not "white." 4. Set forth the procedure by which these restrictions were to be enforced. On January 14, 1944, the petitioners conveyed to Erdman E. Kugler and his wife a parcel of land in the Pleasant Valley Estates facing Lathrop Road, 330 feet deep and 132 feet wide, in order that Kugler might build his home on that property which he did in 1950. On July 2, 1945, all of the petitioners herein formed a partnership known as the Hansche Produce Company and Mecham Farm was contributed to the partnership by the petitioners with a stated value of $29,500. The Hansche Produce Company filed Federal income tax returns for the years 1657 1964 to 1966, inclusive, with the district director of internal revenue at Milwaukee, Wisconsin. In August of 1945, the petitioners, through their partnership, engaged William F. Thalman and Edmund J. Schrang, professional surveyors, to survey and subdivide Pleasant Valley into lots and blocks *25 of the Pleasant Valley Subdivision. Many meetings between Thalman, Warren Hanshe, and local government officials were necessary to work out the technicalities of the subdivision, such as the proper placement of public streets, in order that the approval of the subdivision might be obtained from the proper governmental units. The necessity for these meetings delayed until October 27, 1953, the filing of a plat designating the property in question as the Pleasant Valley Estates No. 1 in the office of the Register of Deeds for Racine County. On November 4, 1953, the petitioners as co-owners of Hansche Produce Company, along with Erdman Kugler and Herbert Newman (who purchased the Piper lot), owners of lots in Pleasant Valley Estates No. 1, entered into an agreement removing the restrictions placed upon the property by the 1943 restrictive agreement and replacing them with similar restrictions. Paragraph 7 of Article III of that agreement provides: 7. All plans and specifications for the Erection of any Dwelling in said Subdivision shall be submitted to the Board of Regulation established by Article VI of this Agreement; and the portions of said plans and specifications relating to *26 the exterior of such Dwelling shall be approved by said Board before any work of Erection is commenced. No such plans and specifications that have been so approved shall be changed, altered or added to with regard to any part of the exterior of such Dwelling without first having such changes, alterations or additions approved by said Board; and no Erection shall be made which shall not be in conformity with such approved plans and specifications. Plans and specifications shall be deemed to have been submitted to said Board upon delivery of two complete copies thereof to any member of said Board if said plans and specifications are approved. Such plans and specifications shall be in sufficient detail so that said Board may determine the exterior grade, height, design, setback lines and materials for exterior construction of said Dwelling together with the location and construction of the ssewage disposal facilities and utilities which will service said Dwelling. The determination of said Board in the approval or disapproval of any such plans and specifications, in each instance, shall be made in accordance with the provisions of this entire Agreement, shall be based upon the exercise *27 of sound discretion, and shall be conclusive and final. Article VI of that agreement created the Board of Regulations referred to in the prior paragraph and declared the original members of that board to be "Warren Milton Hansche, Raymond Victor Hansche, and Melvin Robert Hansche," three of the petitioners herein. The duties of that board are as follows: 1. To receive and approve or disapprove all plans and specifications submitted to it as provided for in Paragraph numbered 7 of Article numbered III hereof. * * * * * * 2. To determine the number and kind of family pets that may be kept on any Lot or part thereof and the conditions under which the same may be so kept. 3. To maintain actions and proceedings on behalf of all of the Owners in the Courts of Wisconsin to compel the due enforcement of the provisions of this Agreement and Declaration. The restrictions enforced by the board include: 1. The relation of the dwelling to be constructed to the contour of the land. 2. Specific requirements relating to each individual lot for highway setbacks, side setbacks, and easements. 3. Height of the building and minimum floor base. 4. Size of automobile garages. 5. Restrictions *28 as to the out-buildings, and restrictions as to type of material to be used in the construction of all portions of the buildings. The membership of the Board of Regulations of Pleasant Valley Estates has at all times since its creation by the agreement of November 4, 1953, consisted solely of Warren, Melvin, and Raymond Hansche. A building cannot be built in Pleasant Valley without the approval of Warren, Melvin, and Raymond Hansche. In 1947, Warren and Leona Hansche built their home on lots 1, 2, and 3 of block 6 in Pleasant Valley No. 1 as laid out on the unapproved plat. In 1950, Kugler built a home on his lot. During or prior to the year 1955, the Hansche Produce Company reached an 1658 agreement with A. J. Hay, a real estate broker in the Racine area, whereby Hay would sell lots in Pleasant Valley on a commission basis. At about the time Hay was hired to sell lots in Pleasant Valley, he affixed a sign to that property so that it was visible from one of the well-traveled highways surrounding the property. The sign read "Pleasant Valley Estates, highly restricted subdivision, for sale by A. J. Hay, Realtor, 846 South Wisconsin Avenue, Racine, Wisconsin, Phone ME *29 2-6898." Sometime during 1962, Roy E. Poulsen, also a real estate broker in the Racine, Wisconsin, area, was hired to sell the lots of Pleasant Valley Estates. He also placed a sign upon the property advertising it for sale and suggesting that he be contacted by any interested party. Except for the sales to Kugler and Piper, all sales of lots in Pleasant Valley Estates Subdivision, including all sales during the years here before the Court, were made on behalf of the partnership by either Hay or Poulsen. During the years here before the Court and prior thereto, Hay and/or Poulsen would, 3 to 4 times a year, for a period of days place an advertisement in the only local newspaper, the Racine Journal Times, setting forth the availability of lots in Pleasant Valley. These advertisements were large and conspicuous, designating the property in question as Pleasant Valley Estates Subdivision, and showing that property completely subdivided into lots. Exclusive of the lots sold to Kugler and Piper, and the lots upon which Warren Hansche built his home, the partnership known as Hansche Produce Company sold lots in Pleasant Valley as follows: *02Number of Lots Sold
Year
PleasantValley No. 1
PleasantValley No. 2
Total sales price
1952
1
Unavailable
1955
2
Unavailable
1956
5
Unavailable
1957
4
Unavailable
1958
4
Unavailable
1959
4
Unavailable
1960
4
$ 17,958.60
1961
2
12,360.70
1962
5
3
45,819.18
1963
2
5,000.00
1964
8
2
54,307.48
1965
6
3
47,527.50
1966
3
2
31,089.86
1967
1
5
46,038.90
1968
1
5
61,287.51
1969 2
1 24,279.13
52
23
*30 In 1964 and 1965, the net gain of the partnership from the sale of lots in Pleasant Valley Estates was approximately twice the ordinary income from other partnership activities, being $49,105 and $36,496, respectively. In the year 1966, the partnership had net gain from the sale of lots in Pleasant Valley of $23,410. From 1953 through 1966, the petitioners through their partnership, the Hansche Produce Company, spent $121,768.44 in improving the Pleasant Valley Estates Subdivision in order to sell individual lots as residential property. The details of those expenditures are as follows: Year
Total
Pleasant Valley No. 1
Pleasant Valley No.2
1953
Sewerage & grading
$15,084.19
Not allocated
1956
Grading
3,744.07
$ 3,744.07
1962
Sewer
1,437.62
1,437.62
Culvert piping
1,771.35
1,771.35
Sewer assessment by Mt. Pleas- ant Township
7,216.59
$ 7,216.59
Larsen Engineering
612.00
612.00
1963
Larsen Engineering
498.00
498.00
R.W. Oaks-Drainage canal
3,150.00
3,150.00
765' drain tile
1,903.99
1,903.99
1964
Sewer
559.47
559.47
Relocate creek
1,740.00
1,740.00
1965
Engineering
266.02
266.02
Sewer & water
41,923.21
41,923.21
Grading for streets
6,413.67
6,413.67
Grading & excavating
2,139.50
2,139.50
1966
New road grading
5,562.50
2,781.25
2,781.25
Electric cable
1,491.00
1,491.00
Drain line
405.00
405.00
Sewer
11,950.14
11,950.14
Water main
1,028.46
1,028.46
Engineering
5,500.00
5,500.00
Street work 7,371.66 7,371.66
Total $121,768.44
*31 1659 On May 11, 1962, all of the petitioners herein as members of the partnership of Hansche Produce Company entered into an agreement to "redefine the terms of their association," which had been originally set out in their partnership agreement of July 2, 1945, as follows: (2) Business of Partnership. The business of said partnership and the purpose thereof shall be to raise produce and conduct a general farming business; own farm lands, farm machinery, equipment, animals and personal property incidental thereto; to own such real and personal property as shall be necessary for the conduct of such business. To raise mink or other fur bearing animals and own such personal property as shall be incidental to such business. To own such real and personal property, including securities, bonds, stocks, mortgages and moneys as shall be necessary for the conduct of such business, and for the investment of any surplus arising therefrom. By the new agreement, the petitioners expanded the "business of the partnership" as set out in the partnership of July 2, 1945, as follows: (2) Business of Partnership. The business of the partnership and the purpose thereof shall be to raise produce *32 and conduct a general farming business; to own farm lands, farm machinery, equipment, animals and personal property incidental thereto; to own such real and personal property as shall be necessary for the conduct of such business; to raise mink or other fur-bearing animals and own such real and personal property as shall be incidental thereto; to own, buy, sell and trade in real and personal property including commodities, securities, bonds, stocks and mortgages as shall be appropriate from time to time. On May 8, 1967, a plat designating as Pleasant Valley Estates 2, that portion of Pleasant Valley which was not included in the plat of October 27, 1953, was filed and recorded in the office of Register of Deeds, Racine County. That plat was drawn by John Larson, a surveyor in the Racine area. It took some period of time, more than a year, to obtain approval of that plat by the proper governmental units. The petitioners maintained an interest in keeping the restrictions on type of construction up-to-date. Among the improvements to the property in question by the petitioners, in order to improve the natural terrain of the area, was the development of a lake and the improvement *33 of a creek on the property. The partnership's Federal income tax returns for the years 1964, 1965, and 1966 show income earned by the partnership in the following amounts: 1964
1965
1966
Real estate rental (ordinary income) [1]
$18,568
$ 9,636
$14,093
Mink farming (ordinary income) [1]
8,378
10,416
(14,132)
Sale of mink pelts(Capital gain) [1]
24,209
48,140
36,641
Sale of Pleasant Valley lots (Capital gain) [1]
49,105
36,496
23,410
Sale of other real estate (Capital gain) [1]
1,863
21,415
65,473
Ultimate Findings Petitioners' partnership, Hansche Produce Company, was during 1964, 1965, and 1966 conducting a real estate business. During those years, it held the subdivided lots known as Pleasant Valley Estates for sale to customers in the ordinary course of that business. Opinion Petitioners take the classic position that although they have in some respects held and used the land known as Pleasant Valley Estates as the operators of a real estate business, in reality *34 they were doing so only for the purpose of liquidating a land investment and are therefore entitled to treat income from the sale of such land as capital gains. The burden of proof, however, is 1660 upon them to establish their position and, as indicated by our ultimate findings, we have not been persuaded of its correctness. The Supreme Court in Malat v. Riddell, 383 U.S. 569 (1966), in construing section 1221(1), [2] I.R.C. 1954, laid down the fundamentals of the purpose of that statute by the following language: The purpose of the statutory provision with which we deal is to differentiate between "profits and losses arising from the everyday operation of a business" on the one hand * * * and "the realization of appreciation in value accrued over a substantial period of time" on the other. * * * A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in § 1221(1), "primarily" means "of first importance" or "principally." *35 Although the intent of the holders of land upon its acquisition has historically been an important criterion for decision in this area of law, we do not feel it has weight here for the reason that it appears from the record that regardless of petitioners' original intent with respect to the use to which the Mecham Farm was to be put, at least by May 11, 1962, a firm enunciation of that purpose had been made by them in their partnership agreement of that date. Whereas the prior partnership agreement, dated July 2, 1945, had stated as its business purpose the conduct of a produce farm and a mink farm, with the incidental purpose to "own" real estate which might be necessary for that purpose, the agreement of May 11, 1962, expanded the business purpose of the partnership to include "to own, buy, sell and trade in real and personal property." We think this change in stated purpose is significant with respect to petitioners' change of intention in holding the real property here involved. As of May 11, 1962, they were no longer to hold real property as an incident to the carrying on a farm produce business and a mink farm business, but at least as of that date, had the purpose of conducting *36 in addition a real estate business. Petitioners' produce farming had during 1960, 1961, and 1962 shown consistent losses and they had ceased produce farming altogether after the 1962 season. By virtue of the expenditure by them of about $121,768 in improvements on the Mecham Farm and its subdivision by the end of 1966, it had appreciated in value greatly. [3] We think the appreciated value grew, not from the mere passage of time while the property was being held for liquidation purposes, but rather from the expenditure of both time and money by petitioners in the tiling and draining of the land, its subdivision into sizable lots, the advertisement of lots for sale to the public, the installation by petitioners of swer and other residential facilities, including streets, the plat restrictions, and probably even more important, the insistence of petitioners acting as a Board of Regulation upon strict compliance with such restrictions. In short, we are convinced that the holding of Pleasant Valley Estates by petitioners after May 11, 1962, was not the passive holding of liquidating investors but was sufficiently aggressive to characterize their holding as the conduct of a business. *37 With respect to the question whether petitioners' holding of this property during the years at issue was primarily or principally for sale to customers as a business enterprise, we are impressed by the comparative income of the partnership from all sources. From five such sources, including a successful mink farm, the sale of lots in Pleasant Valley Estates was in 1964 by far the greatest in the production of gross income; in 1965, second only to that of the mink farm sale of pelts; and in 1966, ranked third in gross income, while the mink farm suffered a loss. We conclude from the comparison that income derived from Pleasant Valley Estates was of at least as great importance and significance to petitioners as that derived from other sources. It is true that all advertising *38 of the lots for sale was carried on by independent 1661 realtors and all sales of lots were effectuated by them on a commission basis, but this fact is not conclusive of the issue before us. It has been held that one may conduct a business within the meaning of section 1221 through his agent. See John D. Riley, 37 T.C. 932 (1962), affd. 328 F. 2d 428 (C.A. 5, 1964). We find that such is the case here and that this fact does not insulate petitioners' gains from such sales from ordinary income treatment. It is also true that the annual number of lots sold is not great, but we are convinced that the number of sales was affected to a great extent by the rather stringent plat restrictions involved, petitioners' insistence upon strict compliance therewith, and the naturally resultant high price of each lot. [4] In 1964, the average price obtained for each lot sold was about $5,400, in 1965, $5,300, and in 1966, $6,200. Because the record does not indicate the comparative desirability or value of each lot sold, we think it is fair to conclude that each is representative of all lots held by petitioners in Pleasant Valley Estates. Taking the 1965 average value *39 as an average for all years before us, it appears that the value of the 166 lots comprising Pleasant Valley Estates was during those years about $880,000. This value when compared to the value at which the property had been contributed to the partnership, ($29,500) indicates an appreciation in value of about 30 times, while during the same period, the market value of all real estate in the township where Pleasant Valley was located had appreciated only about 10 1/2 times. We have concluded that this disparity in comparative appreciation is due primarily to the active conduct of petitioners in preparing the raw land of the Mecham Farm for sale and their efforts through their agents in effectuating sales. We cannot equate the appreciation in value and petitioners' activities with the passive holding of an investment for liquidation purposes. We have found as an ultimate fact that during the years at issue, petitioners' holding of Pleasant Valley Estates was primarily for sale to customers in the *40 carrying on of a real estate business. It follows under section 1221(1) that Pleasant Valley Estates in their hands was not a capital asset and the gains from the sale of lots therefrom must be accorded ordinary income treatment. Decisions will be entered for the respondent. Footnotes
1. Cases of the following petitioners have been consolidated herewith: RAYMOND V. HANSCHE and ESTATE OF MARGARET HANSCHE, Deceased, Docket No. 2516-69; and WARREN M. and LEONA D. HANSCHE, Docket No. 2561-69.↩
1. Manner reported on partnership tax return. Whether the gain from the sale of Pleasant Valley lots is properly capital gain is the subject of this controversy.↩
2. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩
3. Petitioners contend the increase in value to be partly the result of increased industrial growth in Racine, Wisconsin, but although the record does disclose such growth, there is no showing that it was to any extent accountable for the increased value of the land represented by Pleasant Valley Estates. For all that appears of record, such growth may have been detrimental to a near-by residential subdivision.↩
4. The record does not disclose the price for which any lot was sold during any year at issue. In the absence of such showing, we think it fair to conclude that such prices were high.↩